**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| INOCENCIO OLIVERA-BAHAMUNDI, | |
| Plaintiff, | CIVIL NO. 19-1335 (GLS) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Inocencio Olivera-Bahamundi seeks judicial review of the Commissioner of the Social Security Administration's denial of his application for disability insurance benefits pursuant to Section 205 (g) of the Social Security Act, 42 U.S.C. §405(g). Docket No. 1. Plaintiff alleges, in essence, that the Commissioner erred by denying his request to conduct discovery, and by determining a Residual Function Capacity that failed to adequately consider the physical and mental limitations that the medical records reflect. As a result, Plaintiff requests that the Commissioner's decision be reversed or, in the alternative, that it be remanded for further proceedings.

The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket Nos. 4 and 6. After careful review of the administrative record and the briefs on file, and considering the arguments raised by both parties in the hearing held on March 15, 2021, the Commissioner's decision is **AFFIRMED**.

### I.      Procedural Background

Plaintiff used to work as an unlicensed plumber in different construction companies for fifteen years and, in October 2009, he was dismissed because the company he worked for ceased

operations (Tr[1]. 49-50).  Plaintiff was unable to find another job and was subsequently affected by a combination of medical conditions, such as high blood pressure, arthritis and anxiety, for which he sought treatment (Tr. 49-67). On June 2, 2014, Plaintiff filed an application for disability insurance benefits claiming that his disability began on October 29, 2009 (Tr. 404-405).  Plaintiff's application was denied on September 11, 2014 (Tr. 81-82) and, upon reconsideration, on February 10, 2015 (Tr. 86-87).  As a result, Plaintiff requested a hearing, which was held via video on April 26, 2017, before Administrative Law Judge Pedro E. Tejada ("ALJ").  During the hearing, Plaintiff was represented by counsel and responded to questions posed by his attorney and the ALJ. An impartial Vocational Examiner, Héctor J. Guerra, Ph.D., also testified during the hearing (Tr. 43-80).

On July 17, 2017, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of October 29, 2009 through December 31, 2014, the last date insured (Tr. 15-42).  Plaintiff asked the Appeals Council to review the final decision issued by the ALJ, but the Appeals Council denied this request on February 11, 2019 (Tr. 1-5), making the Commissioner's decision the final decision for review by this Court.

## II.    Legal Framework

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). In reviewing a Social Security decision, the Court's function is limited to deciding whether the ALJ's decision is supported by substantial evidence from the record and based on a correct legal standard. See Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary of Health & Human Services, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence, but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. See Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion". Purdy v.

---

[1] "Tr." refers to the transcript of the record of proceedings.

Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018); Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F. 3d 68, 72 (1st Cir. 2006). The Commissioner's findings must be upheld by the court if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion. See Rodríguez v. Secretary of Health and Human Services, 647 F. 2d 218 (1st Cir. 1981). If the ALJ's decision is supported by substantial evidence, it must be upheld, even if the record could arguably justify a different conclusion. See Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987). Therefore, reversal of an ALJ's decision by this Court is warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no "evidence rationally adequate...to justify the conclusion" of the ALJ. Manso–Pizarro, 76 F.3d at 16.

In reaching the final decision, it is the Commissioner's responsibility to determine issues of credibility and to draw inferences from the evidence in the record. See Purdy v. Berryhill, 887 F. 3d 7 (1st Cir. 2018). To this end, courts will not second guess the Commissioner's resolution of conflicting evidence. See Irlanda Ortiz v. Secretary of Health & Human Services, 955 F. 2d 765, 769 (1st Cir. 1991). In sum, this court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey v. Barnhart, 276 F.3d at 9.

## B. Disability determination by the Social Security Administration: Five Step Process.

Plaintiff generally has the burden of proving that he has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Rivera-Tufiño v. Commissioner of Social Security, 731 F.Supp.2d 210, 212–13 (D.P.R. 2010). The ultimate question is whether Plaintiff is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir.1982); 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, a five-step sequential evaluation process must be applied. 20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-142; Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the decision-maker moves to the second step, where it must determine whether the claimant has a medically severe impairment or combination of impairment that significantly limits claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the impairment or combination of impairments is severe, the third step applies. At this point, the ALJ must determine whether the claimant's severe impairments meet the requirements of a "Listed Impairment" which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a listed impairment or an impairment equivalent in severity to a listed impairment, the claimant is considered disabled.

 If the claimant's impairment does not meet a listed impairment, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). An individual's RFC reflects his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1520(e) and 404.15245(a)(1).  At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). The Commissioner has the burden under step five to prove the existence of other jobs in the national economy that claimant can perform, in view of claimant's RFC, age, education and work experience. See Ortiz v. Secretary of Health & Human Services, 890 F. 2d 520, 524 (1st Cir. 1989); 20 C.F.R. § 404.1520(g). If there are none, then the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

To be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. See Cruz Rivera v. Secretary of Health & Human Services, 818 F. 2d 96, 97 (1st Cir. 1986).

### III.    Discussion

On August 17, 2020, Plaintiff filed a memorandum of law seeking reversal or remand of the ALJ's final decision and, on October 30, 2021, the Commissioner submitted a memorandum in response. Docket Nos. 13 and 17.  The parties had the opportunity to explain to the Court the basis for their propositions in an oral argument hearing that was held on March 15, 2021. Docket No. 26. Plaintiff argues, in essence, that the ALJ erred by not allowing the discovery requested, namely, interrogatories and subpoenas to physicians whose medical files were evaluated by the ALJ; and erred by determining a RFC that did not adequately reflect Plaintiff's physical and mental limitations. The Court's jurisdiction is limited to deciding whether the ALJ's decision is supported by substantial evidence from the record and based on a correct legal standard.

### A.  The ALJ Decision

In the case at hand, when applying the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 29, 2009 through the last date insured, that is, December 31, 2014 (Tr. 24) and proceeded to step two of the analysis. At the second step, the ALJ found that the claimant had the following severe impairments: hypertension, arthritis, obesity, and affective and anxiety related disorders (Tr 24).  The ALJ deemed, at the third step, that these impairments or combination of impairments did not meet or medically equal the severity of a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1[2] (Tr. 25). Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC.

The ALJ determined that, through the date last insured, Plaintiff had a RFC as follows: to perform light work as defined in 20 C.F.R. §404.1567(b) except he is able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand 6 hours, walk 6 hours, sit 6 hours in an 8-hour workday; climb ramps and stairs occasionally but never climb ladders, ropes or scaffolds.  He is also able to balance, stoop, kneel, crouch, and crawl occasionally, handle (perform

---

[2] Plaintiff alleged in his Memorandum of Law that the ALJ erred "by not finding that plaintiff's impairments satisfied or equaled the criteria of Listings 400 (H)(1), 14.09, 12.04, 12.06, among others". Docket No. 13 at page 8.  However, throughout the Memorandum, Plaintiff did not point to any specific evidence in support of this allegation. Notably, the ALJ in its determination provided a detailed analysis as to how Plaintiff's impairments did not meet the Listings. During the hearing, in response to questions from the Court, Plaintiff's counsel informed that the argument regarding the ALJ's alleged error in evaluating the Listings was abandoned.

gross manipulation) frequently bilaterally, and finger (perform fine manipulation) occasionally bilaterally. Plaintiff must avoid exposure to extreme cold, extreme heat, wetness, and humidity. He is able to perform simple, routine, repetitive tasks or jobs that can be learned in 30 days or less; able to understand, remember, and carry out simple instructions; and limited to work that requires no interaction with crowds or the general public, but could frequently interact with coworkers or supervisors (Tr. 27).

At the fourth step, the ALJ concluded that claimant was unable to perform any of his past relevant work (Tr. 34), and neither party disputes this conclusion. The ALJ ended the sequential inquiry at step five when he concluded, after adopting the Vocational Expert's testimony, that through the date last insured there were jobs that existed in significant numbers in the national economy that the claimant could perform, considering the claimant's age, education, work experience, and residual function capacity (Tr. 34-35). Specifically, the ALJ determined that Plaintiff could have performed the following occupations: box sealing inspector, sifter, and ampule sealer (Tr. 35). And that the Vocation Expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Consequently, the ALJ concluded that Plaintiff was not disabled from the onset date through the date last insured.

## B.  Analysis of ALJ Decision and Plaintiff's Allegations of Error
### 1.  Denial of Discovery Requests

Plaintiff alleges that the ALJ erred by not allowing Plaintiff's request to submit interrogatories and *subpoenas* to several physicians whose opinions were used by the ALJ in his determination. With regards to the non-examining physicians, Plaintiff contends that the ALJ should not have considered their opinions without providing Plaintiff the opportunity to cross examine them during the hearing regarding the rationale for their conclusions. However, in its decision the ALJ determined that Plaintiff failed to reveal the important facts that the testimony of these witnesses would prove or why these facts could not be proven without the issuance of *subpoenas* (Tr. 21 ref. to 455-467). To this end, the regulations establish that an ALJ may issue a *subpoena* when the requesting party states the important facts that the witness or document is expected to prove and indicate why these facts could not be proven without issuing a *subpoena*. 20 C.F.R. §404.950(d). Furthermore, the ALJ stated that State Agency Examiners are licensed medical professionals familiar with the applicable Social Security standards and definitions, and

that they had thoroughly reviewed the medical evidence before providing their reports at the early stages of the administrative process[3] (Tr. 21).

Plaintiff's discovery request is based on Richardson v. Perales, 402 U.S. 38 (1971), where a claimant failed to exercise his *subpoena* rights and did not cross examine physicians, which resulted in the denial of benefits.  Upon further analysis of Richardson by this District Court, it has been determined that allowing trial-like procedures in the administrative process places an extreme burden on the Social Security Administration, and if a claimant does not state the important facts that the witness or document is expected to prove, the ALJ does not abuse its discretion in denying a *subpoena* particularly when combined with the weight of the evidence before the ALJ in the form of reports from physicians whose conclusions are consistent with a finding of no disability. See Feliciano v. Chater, 901 F. Supp. 50, 53 (D.P.R.1995).  Posed with a similar controversy regarding discovery and the ALJ's discretion as to discovery matters, this District Court found that "[t]he ALJ's exercise of discretion was not a denial of Plaintiff's due process rights […] an applicant for social security does not have an absolute right to cross-examine witnesses who present reports contrary to Plaintiff's interests." López v. Chater, 8 F. Supp. 2d 152, 156 D.P.R. (D.P.R. 1998), citing Feliciano, *supra*.    Furthermore, a claimant is not entitled to *subpoena* physicians, where no convincing argument as to why cross-examination is necessary. Arguments regarding the physician's failure to personally examine the claimant or that their opinions are based on an incomplete record are related to the weight of the evidence, not as to why cross-examination is necessary.  5 U.S.C.A. §  556(d); 20 C.F.R. §§  404.950(d)(1, 2); 416.1450(d)(1, 2); see Butera v. Apfel, 173 F.3d 1049 (7th Cir. 1999).   When a claimant provides numerous documents and testifies at the hearing, the witnesses' testimonies are not reasonably necessary if the *subpoenas* fail to set forth why the facts to be presented by each witness are reasonably necessary to the proceeding. 20 C.F.R. §§ 404.950(d)(1, 2); see Ford v. Commissioner of Social Security, 143 F.Supp.3d 714 (S.D. Ohio, 2015).

Plaintiff's request for additional discovery was purportedly directed at understanding the physicians' rationale for reaching their conclusions; however, the physician's rationale was provided in the opinions rendered, and go to the weight of the evidence; matter which is reserved

---

[3] It is noteworthy that the ALJ only gave partial weight to the State Agency Examiners because the record was supplemented with additional information after their opinions were rendered. Tr. 33.

for the Commissioner. Therefore, Plaintiff failed to demonstrate what "important facts" were to be proven with the purported discovery that were not already part of the record, and the ALJ adequately explained his rationale for denying the discovery. 20 C.F.R. §404.950. The Court thus concludes that the ALJ did not abuse its discretion by denying the discovery requested by Plaintiff.

### 2.    Challenges to the ALJ's RFC Determination

The Social Security defines an RFC as the most an individual can still do despite his or her limitations, and it is assessed based on all the relevant evidence in the individual's case records. 20 C.F.R. §404.1545.  In determining an RFC, all recorded medically determinable impairments that are suffered by claimant are considered, including non-severe impairments and the claimant's objective complaints. *Id.*  An RFC assessment is "ultimately an administrative determination reserved to the Commissioner." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007), citing 20 C.F.R. §416.927(e)(2), §416.946.  But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.*

In this case, the ALJ considered opinion evidence as well as Plaintiff's symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence to determine the RFC. 20 C.F.R. §404.1529 and 20 C.F.R. §404.1527.  Considering his combined physical limitations, the ALJ determined that Plaintiff's physical RFC was limited to performing work at a light exertional level, in this case, lifting up to 20 pounds occasionally and 10 pounds frequently, and standing and walking 6 hours in an 8-hour workday (Tr. 27-28).  Plaintiff, however, claims that the RFC should have reflected performance of less than full sedentary work, and that the ALJ failed to evaluate Plaintiff's symptoms and some of the medical evidence that established that he was not able to stand or walk for long periods of time.  The ALJ addressed claimant's contention to this end and was not persuaded because the overall evidence demonstrated that the combined physical impairments restricted him to the light exertional level detailed in the RFC (Tr. 28).

The ALJ assessed the intensity, persistence and limiting effects of Plaintiff's symptoms and concluded that they were not entirely consistent with the medical evidence and other evidence in the record (Tr. 28-30). Specifically, the ALJ noted frequent readings of normal blood pressure (Tr. 485, 487, 561, 565); failure to inform chest pain or discomfort (Tr. 554-557); no hypertensive

complications or congestive heart failure among other multiple potential complications (Tr. 555-557); that Plaintiff could take care of himself, perform chores, drive and manage his finances without assistance (Tr. 560), and that his treatment was limited to very conservative measures such as standard medications (Tr. 29 ref. to 483). The ALJ also considered Plaintiff's complaints of pain due to arthritis and analyzed the records of various physicians, including laboratory testing and x-rays (Tr. 30 ref. to 485-487; 516; 555-556; 558-565; 196-199; 189-192). With regards to Plaintiff's obesity, the ALJ noted that the medical evidence of record showed that treatment was limited to standard recommendations of a healthy diet and exercise (Tr. 30 ref to. 428-435; 483-487; 556). And even though the ALJ did find that Plaintiff's symptoms affected his ability to work, his rationale determining the RFC was based on the extent these symptoms could *reasonably* be accepted as consistent with the objective evidence. 20 C.F.R. §404.1529; §404.1527. To this end, it is noteworthy that Consultative Examiner, Dr. Jesús Romero, opined that Plaintiff had basically no physical limitations (Tr. 556), but the ALJ, upon evaluating the record as a whole, determined a more favorable RFC for Plaintiff when it determined that Plaintiff was limited to performing only a range of light work.

Plaintiff also challenges the ALJ's mental RFC determination. The ALJ found evidence of both affective and anxiety-related disorders, but determined that Plaintiff could perform simple, routine, repetitive tasks (Tr. 30; 20 C.F.R. §404.1567(b)). The ALJ noted that Plaintiff had no history of psychiatric hospitalization or other crisis intervention, and no history of outpatient mental health services until 2012; that treatment was limited to medication and psychotherapy; that Plaintiff in his evaluations generally appeared fully oriented, cooperative, logical, coherent and calm (Tr. 30 ref. to 125-131; 196-199; 180-183); that the treatment for his anxiety and depressive disorder was treated through American Psychiatric System ("APS"), and that mental health specialists from APS in 2015 continued to document fairly stable and normal findings despite his sadness (Tr. 30 ref. to 533; 264-281). Notably, the ALJ indicated that at times Plaintiff's depression was categorized as severe without psychotic behavior, but most of the time the mental specialists involved in his treatment noted no more than moderate depression, and that Plaintiff was able to go to his appointments unaccompanied and that exam findings were typically nearly normal despite sadness and anxiety (Tr. 31-32 ref. to 267, 272, 276). As a result, the ALJ found that Plaintiff was able to perform simple, routine repetitive tasks that could be learned in 30 days,

that he was able to understand, remember and carry out simple instructions, and limited his work to frequent interaction with coworkers and supervisors but no interaction with the public (Tr. 32).

Plaintiff, however, argues that his mental impairment was greater than deemed by the ALJ and that he could not perform jobs at a rapid pace because of his alleged inability to concentrate, as would be required in a production line. Furthermore, Plaintiff claims that the ALJ's flawed RFC influenced the hypothetical questions presented to the Vocation Expert ("VE") as well as his recommendation regarding available jobs in the industry.  To this end, since the Court deems that substantial evidence clearly supports the RFC determination and the ALJ accurately relayed that RFC to the VE in the hypotheticals posed, the ALJ was entitled to rely on the VE's testimony. See Berríos-López v. Secretary of Health and Human Services, 951 F. 2d 427, 429 (1ˢᵗ Cir. 1991); Vega v. Colvin, 164 F. Supp. 3d 249 (D. Mass., 2016) (reliance on the testimony of a vocational expert is proper only if that expert is provided with an accurate assessment of the claimant's residual functional capacity).

Upon questioning the accuracy of the RFC, Plaintiff asks the Court to take a close look at the opinion rendered by Dr. Jorge Suria, a psychiatrist who served as a Consultative Examiner, and to evaluate the APS notes which he claims show greater limitations with regards to concentration[4] required to perform the range of jobs recommended by the VE.  However, the Court notes that the ALJ in his determination specifically addressed Plaintiff's ability to perform jobs at the pace expected in a production line, but was not persuaded and determined that the medical evidence of record showed that Plaintiff was able to perform simple, routine, repetitive tasks that could be learned in 30 days or less; and that he was able to understand, remember, and carry out simple instructions (Tr. 28).  By asking the Court to look further into Dr. Suria's opinion and APS' medical files, Plaintiff is asking the Court to conduct the impermissible: reweighing the evidence already evaluated by the ALJ. See Biestek v. Berryhill, __ U.S. __; 139 S. Ct. 1148, 1154 (2019); Evangelista v. Secretary of Health and Human Services, 826 F. 2d 136, 144 (1ˢᵗ Cir.1997). This the Court will not do.

Plaintiff claims that the ALJ conducted the function-by-function analysis ("FbFA") in a "perfunctory or *pro forma*" manner. The FbFA is conducted by the ALJ prior to determining the

---

[4] During the hearing, the Commissioner noted that APS records did show at instances diminished concentration but other notes reflect a normal mental exam and that Plaintiff's concentration was intact.

RFC of claimant. See Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). The actual analysis requires that the ALJ identify any limitations in physical and mental abilities. 20 C.F.R. § 416.945(b)(c); 20 C.F.R. §404.1545(b)(c). Essentially, the ALJ evaluates what the claimant cannot do, to then determine what the claimant can do. See, e.g., Le v. Colvin, 2016 WL 7104835, at *6 (D. Mass. 2016). Some FbFA determinations have been upheld even though the ALJ relied in part by the State Agency Examiner's function-by-function analysis of exertional limitations. See Carmichael v. Astrue, 2011 WL 2516202, at *3 (D. Me. 2011). In other cases, the ALJ's failure to expressly perform the function-by-function analysis called for by SSR 96–8p was cured with a series of findings that demonstrate by implication that he performed the requisite assessment. See Gaudet v. Astrue, 2012 WL 2589342, at *6 (D. Mass. 2011). When so cured, the failure to make explicit findings did not merit remand. See Rigby v. Astrue, 2012 WL 282988, at *3 (D. Me. 2012). In this case, however, the ALJ goes into great detail describing the effects of plaintiff's various ailments (Tr. 35-37: discussing in detail how obesity affects plaintiff, including his ability to stand, walk and sit; discussing the medical history and findings of several physicians who treated plaintiff, particularly as to his mental health, and adopting their view of the evidence over plaintiff's own). Regarding mental impairments, the ALJ mentioned how Plaintiff complained of limited ability to socialize in and out of work, which the ALJ subsequently found not credible or consistent with the record, citing several physicians (Tr. 36). The ALJ's adoption of the consultative examiners' and physicians' analysis of Plaintiff's mental health is substantiated by the record.

When there is substantial evidence supporting both sides of a claim, the ALJ's determination must stand because he is tasked with determining the RFC. See Rodríguez Pagán v. Secretary of Health and Human Services, 819 F. 2d 1, 3 (1st Cir. 1987) (substantial evidence supported finding that claimant's exertional impairments, consisting of functional limitation resulting from fracture to left leg, arthritis and high blood pressure, did not preclude him from performing full range of jobs requiring sedentary work, although severe impairment precluded his return to his former work as carpenter and construction laborer, and thus claimant was not entitled to award of benefits); Evangelista, 826 F. 2d at 144 (even if the record arguably could justify a different conclusion, the ALJ's determination must be affirmed so long as it is supported by substantial evidence); Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148 (2019) (under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

it contains sufficient evidence to support the agency's factual determinations; the threshold for evidentiary sufficiency under the "substantial evidence" standard used when courts review agency factfinding is not high).

In this case, the Court finds that the ALJ's determination was based on substantial evidence. The ALJ performed a longitudinal review of Plaintiff's treatment history, considered his testimony during the hearing regarding his symptoms, and concluded that the overall evidence demonstrated that his combined physical and mental impairments restricted him to the light exertional level established in the RFC (Tr. 27-34).  The ALJ noted the inconsistency between Plaintiff's allegations of pain and the record which little to no evidence of atrophy, joint swelling or decreased mobility (Tr. 32). Moreover, the ALJ evaluated other factors such as activities of daily living which Plaintiff could perform (Tr. 32); and dully evaluated multiple opinion evidence regarding Plaintiff's physical and mental conditions (Tr. 32-34). The ALJ's role is precisely to determine issues of credibility, to draw inferences from the record, and to resolve conflicting evidence. See Irlanda Ortiz v. Secretary of Health and Human Services, 955 F. 2d 765, 769 (1st Cir. 1991).  As a result, the Court finds that the ALJ properly evaluated and considered the record as a whole and that his determination is amply supported by substantial evidence in the administrative record.

## IV.    Conclusion

After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand based upon a violation of the substantial evidence rule, the final decision of the Commissioner is **AFFIRMED,** and this action is dismissed.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March, 2021.

*s/Giselle López-Soler*
GISELLE LÓPEZ-SOLER
United States Magistrate Judge